

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

NOV 1 9 2018

PATRICK KEANEY
Clerk, U.S. District Court

By_____

Deputy Clerk

| | |
|---|---|
| JOHN CECIL,<br>on behalf of himself and all others<br>similarly situated,<br><br>         Plaintiff,<br><br>vs.<br><br>BP AMERICA PRODUCTION COMPANY<br>(f/k/a Amoco Production Company)<br>(including,<br>BP Amoco Corporation, ARCO, BP<br>Exploration, Inc., BP Corporation North<br>America, Inc., and BP Energy Company),<br><br>         Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 16-CV-00410-KEW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### ORDER AWARDING ATTORNEYS' FEES, REIMBURSEMENT OF
### LITIGATION EXPENSES, AND CASE CONTRIBUTION AWARD

Before the Court is Class Representative John Cecil's Motion for Approval of Attorneys' Fees, Reimbursement of Litigation Expenses, Case Contribution Award (Doc. 242) (the "Motion") and Memorandum of Law in Support Thereof (Doc. 243) (the "Memorandum"), wherein Class Representative seeks entry of an Order approving his request for (1) Attorneys' Fees in the amount of $58,800,000, which represents 26.6% of the Gross Settlement Value; (2) reimbursement of Litigation Expenses in an amount not to exceed $1,600,000; and (3) Case Contribution Award in the amount of $450,000. The Court has considered the Motion and Memorandum, all matters and evidence submitted in connection therewith, including the objections filed (Docs. 246-249), and the proceedings at the Final Fairness Hearing conducted on November 19, 2018. The Court finds the Motion should be granted.

IT IS THEREFORE ORDERED as follows:

1.      This Order incorporates by reference the definitions in the Settlement Agreement (Doc. 171-1) and all terms not otherwise defined herein shall have the same meanings as set forth in the Settlement Agreement.

2.      The Court, for purposes of this Order, incorporates herein its findings of fact and conclusions of law from its Order and Judgment Granting Final Approval of Class Action Settlement as if fully set forth.

3.      The Court has jurisdiction to enter this Order and over the subject matter of the Litigation and all parties to the Litigation, including all Class Members.

4.      The requests for Attorneys' Fees, reimbursement of Litigation Expenses, and Case Contribution Award were set forth in the Notice of Settlement and again in the Motion which was posted on the Settlement website, www.cecil-bp.com. The Court finds that the form of the Notice of Settlement and the method in the Plan of Notice was the best notice practicable under the circumstances; they constitute due and sufficient notice to all persons and entities entitled to receive such notice and fully satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

5.      The Court has been provided with abundant evidence in support of the requests for Attorneys' Fees, reimbursement of Litigation Expenses, and Case Contribution Award, including but not limited to:

(a) Joint Declaration of Plaintiff's Counsel (Doc. 244-8 through 244-10);

(b) Declaration of Daniel E. Smolen (Doc. 244-11);

(c) Declaration of Terry L. Stowers (Doc. 244-12);

(d) Declaration of Robert J. Kee (Doc. 244-13);

(e) Declaration of Terry J. Barker (Doc. 244-14);

(f) Declaration of Robert N. Barnes, Patranell Britten Lewis and Emily Nash Kitch (Doc. 244-15);

(g) Declaration of Jeffrey J. Angelovich (Doc. 244-16);

(h) Declaration of Michael Burrage (Doc. 244-17);

(i) Declaration of John Cecil (Doc. 244-3);

(j) Joint Declaration of Plaintiffs in *Chockley v. BP* (Doc. 244-4);

(k) Declaration on behalf of Chieftain Royalty Company (Doc. 244-5);

(l) Declaration on behalf of the Baptist Foundation of Oklahoma (Doc. 244-6);

(m) Declaration on behalf of Sagacity, Inc. (Doc. 244-7);

(n) Declaration of Steven S. Gensler (Doc. 244-27);

(o) Declaration of [Former Justice of the Oklahoma Supreme Court] Steven W. Taylor (Doc. 244-28);

(p) Declaration of Brian T. Fitzpatrick (Doc. 244-29);

(o) Summary table of fee, expense, and case contribution awards in Oklahoma royalty underpayment class actions (Doc. 244-23); and

(p) Various declarations on attorneys' fees filed in other cases, including declarations by former judges Layn Phillips, Michael E. Burrage, and Professor Geoffrey Miller (Docs. 244-18 through 244-22).

This evidence was submitted to the Court well before the objection and opt-out deadline, and no Class Member objected to or otherwise refuted this evidence.

6.     For the reasons set forth in the findings of fact and conclusions of law below, the Court hereby awards the following:

3

(a)     Class Counsel is awarded Attorneys' Fees of $58.8 million, to be paid from the Gross Settlement Fund;

(b)     Class Counsel shall be reimbursed for Litigation Expenses, in an amount not to exceed $1.6 million, to be paid from the Gross Settlement Fund; and

(c)     Class Representative is awarded a Case Contribution Award of $450,000, to be paid from the Gross Settlement Fund and to be distributed among him and the plaintiffs in *Chockley v. BP* and *Chieftain v. BP* as follows:

        (i)     John Cecil: $350,000;

        (ii)     Anne Chockley: $25,000;

        (iii)     Dwayne Sager: $25,000;

        (iv)     Johnita L. Foster: $25,000; and

        (v)     Chieftain Royalty Company: $25,000.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.     The Notice of Settlement Fully Informed the Class of the Fees, Expenses, and Case Contribution Awards Sought.**

7.     On September 26, 2018, JND mailed the Notice of Settlement to 33,002 members of the Settlement Class. *See* JND Decl. (Doc. 244-1) at ¶6.

8.     The Notice approved by this Court expressly stated that Class Representative would seek (1) attorneys' fees up to 40% of the Gross Settlement Value (it now seeks less than 27%); (2) reimbursement of Litigation Expenses not to exceed $1.6 million; and (3) a Case Contribution Award not to exceed $450,000. JND Decl., (Doc. 244-1) at ECF 10.

9.     Class Counsel filed its Motion and Memorandum of Law on October 19, 2018 (Docs. 242, 243), seven (7) days prior to the deadline for members of the Settlement Class to

object. The Settlement Administrator also posted the complete filings on the Settlement website that same day.

10.     Two objections were filed regarding the Fee Request, Request for Reimbursement of Litigation Expenses, or Case Contribution Award. (Docs. 246, 247). One objection was filed regarding the Allocation Methodology. (Doc. 248). And, one objection, titled "Request for Declaratory Judgment," (Doc. 249), was filed by a person who was determined to be not within the Settlement Class.

**B.     Federal Common Law Governs the Request for Attorneys' Fees, Reimbursement of Litigation Expenses, and Case Contribution Award.**

11.     Plaintiff sued Defendant under RICO, thereby invoking federal question jurisdiction and making federal common law the governing law. Gensler Decl. (Doc. 244-27) at 41.

12.     The Parties also contractually agreed that the Settlement Agreement shall be governed *solely* by federal common law with respect to certain issues, including the right to and reasonableness of attorneys' fees, reimbursement of Litigation Expenses, and Case Contribution Award:

> Any award of attorneys' fees, Case Contribution Award, or Litigation Expenses will be governed by federal common law, including federal equitable common fund class action law.

Settlement Agreement (Doc. 171-1) at ¶7.1.

13.     The Court finds that this choice of law provision complies with Oklahoma choice of law and/or conflicts of laws principles and should be and is hereby enforced. *See Chieftain Royalty Co. v. XTO Energy Inc.*, No. 11-cv-29-KEW (E.D. Okla. Mar. 27, 2018), Order Awarding Attorneys' Fees ("*Chieftain* Fee Order") (Doc. 244-31) at ¶¶6(d)-(e); *see also Leritz v. Farmers Ins. Co.*, 2016 OK 79, ¶1, 385 P.3d 991, 992 ("Generally, '[t]he law of the state chosen by the

parties to govern their contractual rights and duties will be applied . . . .'"); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 (1939).

**C.     The Fee Request is Reasonable Under Federal Common Law.**

14.     Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." An award of attorneys' fees is a matter uniquely within the discretion of the trial judge, who has firsthand knowledge of the efforts of counsel and the services provided. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988). The Court finds that the fees requested here are authorized by the Settlement Agreement (Doc. 171-1) at ¶7.1. Based on the Court's knowledge of the efforts and results of Class Counsel, the Court finds that the Fee Request is fair and reasonable.

15.     Based on the evidence submitted and the law, the Court approves Class Representative's calculation of the Fee Request as a percentage of the Gross Settlement Fund. District courts have discretion to apply either the percentage of the fund method or the lodestar method—but, in the Tenth Circuit, the percentage of the fund method is clearly preferred. *See Chieftain* Fee Order (Doc. 244-31) at ¶6(f); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988); *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849 (10th Cir. 1993); *Chieftain Royalty Co. v. Laredo Petro., Inc.*, No. CIV-12-1319, 2015 WL 2254606, at *3 (W.D. Okla. May 13, 2015) ("In the Tenth Circuit, the preferred approach for determining attorneys' fees in common fund cases is the percentage of the fund method."). Further, in the Tenth Circuit, in a percentage of the fund recovery case such as this, where federal common law is used to determine the reasonableness of the attorneys' fee under Rule 23(h), neither a lodestar analysis nor a lodestar cross check is required. *Brown*, 838 F.2d at

456 & n.3; *Chieftain* Fee Order (Doc. 244-31) at ¶6(f) (neither lodestar analysis nor lodestar cross-check is required); *Reirdon v. XTO Energy, Inc.,* No. 6:16-CV-00087-KEW (E.D. Okla. Jan. 29, 2018) (Doc. 124) at ¶6(f) (same); *Chieftain Royalty Company v. QEP Energy Company,* No. CIV-11-212-R (W.D. Okla. May 31, 2013) (Doc. 182) (lodestar analysis is not required); *CompSource Okla. v. BNY Mellon, N.A.,* 2012 WL 6864701, \*8 (E.D. Okla. 2012) ("A majority of circuits recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions."). Rather, the court may make general findings regarding the expenditure of time and labor based on the record as a whole. *See, e.g., Laredo* Fee Order; *Northumberland County Ret. Sys. v. GMX Res. Inc.,* No. CIV-11-520, 2014 WL 12014020, at ¶7 (W.D. Okla. July 31, 2014).

16.    When determining attorneys' fees under the percentage method, the Tenth Circuit evaluates the reasonableness of the requested fee by analyzing the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). *See Brown*, 838 F.2d at 454-55; *Chieftain* Fee Order at ¶6(h). Not all factors apply in every case, and some deserve more weight than others depending on the facts at issue. *Brown*, 838 F.2d at 456; *Chieftain* Fee Order (Doc. 244-31) at ¶6(h). Based on the evidence and the law, the Court finds the requested fee of $58.8 million is reasonable under the applicable *Johnson* factors.

17.    The twelve *Johnson* factors are: (l) the time and labor required, (2) the novelty and difficulty of the questions presented by the litigation, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount in controversy and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11)

the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Gottlieb*, 43 F.3d at 482 n.4.

18.     I find that the eighth *Johnson* factor—the amount involved in the case and the results obtained—is the most important and weighs most heavily in support of the requested fee. *See Chieftain* Fee Order (Doc. 244-31) at ¶6(j); *Brown*, 838 F.2d at 456 (holding this factor may be given greater weight when "the recovery [is] highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class."); FED. R. CIV. P. 23(h) adv. comm. note (explaining for a "percentage" or contingency-based approach to class action fee awards, "results achieved is the basic starting point").

19.     Here, the evidence shows that, under the results obtained factor, the Fee Request is fair and reasonable. Taylor Decl. (Doc. 244-28) at ¶13 ("As I reviewed and considered all the factors in determining a proper fee award, I kept coming back to the *results* achieved as my most important guide. The results achieved in this case are very significant in light of all the potential contested issues that loom..."); Gensler Decl. (Doc. 244-27) at ¶47; *see Chieftain* Fee Order (Doc. 244-31) at ¶6(k). There are four critical components of this Settlement: (1) the Gross Settlement Fund of $147 million, which alone represents more than a 100% recovery of the damages without interest and is a significant recovery for the Class; (2) Defendant's past implementation of procedures and practices for calculating royalty on production from Class Wells that inured to the benefit of Class Members as a *result* of the Litigation ("Past Benefits"), which Plaintiff's expert has valued at $38 million (Reineke Decl. (Doc. 244-25) at ¶6); and (3) Defendant's go forward agreement to continue using these procedures and practices for calculating royalty for a period of seven (7) years beginning May 1, 2018 through April 31, 2025 ("Future Benefits"), which Plaintiff's expert has valued at over $36 million. *Id.* at ¶7. Thus, the result obtained here through

8

the Settlement bestows a total economic benefit of $221 million (the Gross Settlement Value) upon the Class. This is one of the largest settlements in Oklahoma royalty owner history.

20.     In valuing the result obtained for purposes of determining a reasonable fee to award under the Tenth Circuit's percentage of recovery method, it is well-established that the fee award should be based on the total economic benefit bestowed on the class. *See, e.g., See Chieftain* Fee Order (Doc. 244-31) at ¶6(l); *Fager v. Centurylink Comm'cns,* No. 14-cv-00870, 2015 WL 13357867, at *3 (D.N.M. June 25, 2015) (collecting cases), *aff'd by* 854 F.3d 1167 (10th Cir. 2016); *see also Boeing Co. v. Van Gemert,* 444 U.S. 472, 479 (1980) (explaining that, in common fund cases, the fee to be awarded should be based on "the full value of the benefit to each absentee member" obtained through the "entire judgment fund"). Thus, in making this assessment, "the court should take into account the value of any future relief under the settlement." *See Chieftain* Fee Order (Doc. 244-31) at ¶6(l); *Feerer v. Amoco Prod. Co.,* No. 95-0012 JC/WWD, 1998 U.S. Dist. LEXIS 22248, at *42-43 (D.N.M. May 28, 1998) (finding fee award of $20,542,665, which represented 41.9% of $49,000,000 cash portion of settlement and "approximately 27.7% to 29.5% of the current value of the settlement" based upon the agreed-upon future changes to royalty payment calculations, which had a present value of $21,000,000 to $25,600,000) (collecting cases). [1] Professors Gensler and Fitzpatrick agree. Gensler Decl. (Doc. 244-27) at ¶¶53-55; Fitzpatrick Decl. (Doc. 244-29) at ¶14.

---

[1]     *See also, e.g., Principles of the Law of Aggregate Litigation,* §3.13(b) (American Law Institute, 2010) ("[A] percentage-of-the-fund approach should be the method utilized in most common-fund cases, *with the percentage being based on both the monetary and the nonmonetary value of the judgment or settlement.*"); *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 773-74 (11th Cir. 1991) (instructing that courts should consider, among other factors, "*any non-monetary benefits conferred upon the class by the settlement*" in determining reasonable attorneys' fees to be paid from common fund recovery); *Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir. 2003) (holding "where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained . . . courts may include such relief as part of the value of a common fund for purposes of applying the percentage method of

21.     Here, each of the three components of the Settlement represent significant, concrete monetary benefits to the Settlement Class. Gensler Decl (Doc. 244-27) at ¶¶48-55, 62; Fitzpatrick Decl. (Doc. 244-29) at ¶14. And, as Professor Gensler has aptly opined, unlike cases in which absent class members' recovery is contingent upon their submission of information or some sort of complicated claims process, here, these benefits are **_guaranteed_** and automatically bestowed upon the Settlement Class as a result of the Settlement:

> Importantly, this is a cash recovery that will be distributed to Class Members automatically. There are no claim forms to fill out, no elections to make, and no documentation to scavenge out of old records. Indeed, Class Members do not have to take any action whatsoever to receive their benefits. The only thing Class Members need to do is not opt out and wait for their checks to be distributed after the Court grants final approval of the Settlement.

Gensler Decl. (Doc. 244-27) at ¶51. Accordingly, the "results obtained" factor strongly supports a fee award of $58.8 million to be paid from the immediate cash portion of the Settlement that represents no more than 26.6% of the Gross Settlement Value. Taylor Decl. (Doc. 244-28) at ¶13; Gensler Decl. (244-27) at ¶48; Fitzpatrick Decl. (244-29) at ¶¶14-15. *See Chieftain* Fee Order (Doc. 244-31) at ¶6(m).

---

determining fees") (citing *Boeing*, 444 U.S. at 478-79)); *Chieftain Royalty Co. v. QEP Energy Co.*, No. CIV-11-212-R, 2013 WL 12090676 (W.D. Okla. May 31, 2013) (awarding $46.5 million in attorneys' fees on a $155 million gross settlement fund, $40 million of which constituted future benefits); *Anderson v. Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 WL 3378526 (D. Colo. Oct. 20, 2009) (finding, where settlement provided for up-front cash payment of $12,997,493.00 and future changes to royalty payment calculation methodology valued at approximately $10,400,00.00, the "Common Fund created" amounted to "approximately $23,397,493.00" and, thus, a fee award "in the amount of $5,900,000, which represent[ed] approximately 26% of the total economic benefit of the Class Settlement, net of litigation expenses, [which also represented 45% of the $12,997,493 initial cash payment]" was "warranted and reasonable" under Tenth Circuit law); *Droegemueller v. Petroleum Dev. Corp.*, No. 07-cv-1362-JLK-CBS, 2009 WL 961539, at *2-4 (D. Colo. Apr. 7, 2009) (finding "results obtained" factor was measured by "total economic benefit for the Class," which included cash payment for past royalty underpayment claims and present value of changes to "method for calculating future royalties").

22.     I find that the other *Johnson* factors also support and weigh strongly in favor of the Fee Request. *See Chieftain* Fee Order (Doc. 244-31) at ¶6(n). The time and labor Class Counsel have expended in the research, investigation, prosecution and resolution of this Litigation, including the *Chockley* and *Chieftain Cases* against BP, is set forth in the Joint Counsel Decl. (Doc. 244-8) at ¶¶10-47, 81, 85, 94 and Exhibits C-I thereto. This Litigation has required investigation and mastery of complex factual circumstances, the ability to develop creative legal theories, and the skill to respond to a host of legal defenses. To properly perform the legal services this Litigation required, Class Counsel called on their extensive knowledge of gas marketing, engineering, damages modeling, royalty payment practices, and the law. This Litigation involved substantial fact discovery, including reviewing millions of pages of documents and copious amounts of electronic data, taking multiple depositions; and engaging in third-party discovery. *See* Joint Counsel Decl. (Doc. 244-8) at ¶¶10-47. Plaintiff also engaged in substantial expert analysis, including consulting with and preparing expert witnesses; preparing expert reports; accounting review and analysis; land and lease examination and analysis; and engineering evaluation and analysis. *Id.* In addition, Plaintiff engaged in substantial motion practice including motions to dismiss, to compel discovery, a motion to reconsider, class certification, and briefing. *Id.* Overall, Class Counsel and Additional Counsel, combined, dedicated over 21,000 hours of attorney and professional time to this Litigation and reasonably anticipate dedicating additional time and labor through final approval and distribution, which increases significantly if there is an appeal. *See* Joint Counsel Decl. (Doc. 244-8) at ¶85; Supp. Joint Counsel Decl. (Doc. 253-1) at ¶5.a.1. This factor weighs heavily in favor of the Fee Request.

22.     The second *Johnson* factor—the novelty and difficulty of the questions presented in this action—also supports the Fee Request. Joint Counsel Decl. (Doc. 244-8) at ¶95; Gensler

Decl. (Doc. 244-27) at ¶62-65; Fitzpatrick Decl. (Doc. 244-29) at ¶22. *See Chieftain* Fee Order (Doc. 244-31) at ¶6(o). Class actions are known to be complex and vigorously contested. The Declarations prove that this certainly was the case here. They point out that BP had defeated class certification for royalty underpayment in the Oklahoma courts in three earlier cases: *Gillespie v. Amoco Prod. Co.,* No. CIV-96-063-M (E.D. Okla. Jan. 11, 1999); *Watts v. Amoco Prod. Co.,* No. C-2001-73 (Okla. Dist. Ct. Dec. 10, 2002); and *Rees v. BP America Prod. Co.,* 211 P.3d 910 (Okla. Civ. App. 2008), *cert denied* (April 13, 2009). *See* Gensler Decl. (Doc. 244-27) at ¶¶6-7; Fitzpatrick Decl. (Doc. 244-29) at ¶6; Joint Counsel Decl. (Doc. 244-8) at ¶18; *see also* Taylor Decl. (Doc. 244-28) at ¶5. Without question, the claims involved difficult and highly contested issues of Oklahoma oil and gas and class certification law. Class Counsel litigated these difficult issues against the vigorous opposition of highly skilled defense counsel for a defendant that BP, who, as previously mentioned, had defeated class certification three times before. *Id.* The collateral estoppel bar of *Rees* had been upheld in another federal case, and was defeated by new arguments raised for the first time by Class Counsel in this case. Moreover, BP asserted many significant defenses to the Settlement Class' claims that would have to be overcome if the Litigation continued to trial. Despite these hurdles, Class Counsel obtained a significant recovery for the Settlement Class. Thus, the immediacy and certainty of this recovery, when considered against the very real risks of continuing to a difficult trial and possible appeal, support the Fee Request.

23.     I find that the third and ninth *Johnson* factors—the skill required to perform the legal services and the experience, reputation, and ability of the attorneys—support the Fee Request. Joint Counsel Decl. (Doc. 244-8) at ¶¶96, 102; Gensler Decl. (Doc. 244-27) at ¶¶57, 65; Fitzpatrick Decl. (Doc. 244-29) at ¶24; Taylor Decl. (Doc. 244-28) at ¶¶7, 14. *See Chieftain* Fee Order (Doc. 244-31) at ¶6(p). The Declarations prove that this Litigation called for Class Counsel's

considerable skill and experience in oil and gas and complex class action litigation to bring it to such a successful conclusion, requiring investigation and mastery of complex facts, the ability to develop creative legal theories, and the skill to respond to a host of legal defenses. Class Counsel consists of some of the most experienced complex oil and gas class action litigation attorneys in the country. *Id.* Utilizing creativity and zealous advocacy, these attorneys have achieved huge results for their clients. The quality of representation by counsel on *both* sides of this Litigation was high. *See* Declaration of Robert G. Gum (Doc. 244-2) at ¶¶11, 15. Defendant is represented by skilled class action defense attorneys who spared no effort in the defense of their client. This Litigation could have raged for years. Without the experience, skill and determination displayed by *all* counsel involved, the Settlement would not have been reached. These factors strongly support the Fee Request.

24.    I find that the evidence regarding the fourth and seventh *Johnson* factors—the preclusion of other employment by Class Counsel and time limitations imposed by the client or circumstances—weighs in favor of the Fee Request. Joint Counsel Decl. (Doc. 244-8) at ¶¶97, 100; Gensler Decl. (Doc. 244-27) at ¶62; Fitzpatrick Decl. (Doc. 244-29) at ¶¶22, 24. *See Chieftain* Fee Order (Doc. 244-31) at ¶6(s). The Declarations prove that because the law firms comprising Class Counsel are relatively small, Class Counsel necessarily were precluded from working on other cases and pursuing otherwise available opportunities due to their dedication of time and effort to the prosecution of this Litigation. This case has required the devotion of substantial time, manpower and resources from Class Counsel, more than 21,000 hours and $1.45 million in expenses; both are ever-increasing. *See* Joint Counsel Decl. (Doc. 244-8) at ¶¶85, 111; Supp. Joint Counsel Decl. (Doc. 253-1) at ¶5.a.i. A case of the size and complexity of this one deserves and requires the commitment of a large percentage of the total time and resources of firms the size of

those of Class Counsel. Class Counsel had to forego taking on other cases because of this litigation and the burden it placed on their time and resources. Accordingly, these factors support the Fee Request.

25.    I find the evidence and the law regarding the fifth *Johnson* factor—the customary fee and awards in similar cases—further support the Fee Request. *Chieftain* Fee Order (Doc. 244-31) at ¶6(t). Plaintiff's Counsel and Mr. Cecil negotiated and agreed to prosecute this case based on a 40% contingent fee. *See* Cecil Decl. (Doc. 244-3) at ¶7; Joint Counsel Decl. (Doc. 244-8) at ¶¶82, 84, 86-92, 98; Gensler Decl. (Doc. 244-27) at ¶¶58-61; Fitzpatrick Decl. (Doc. 244-29) at ¶¶16-21; Taylor Decl. (Doc. 244-28) at ¶¶12-14. This fee represents the market rate and is in the range of the "customary fee" in oil and gas class actions in Oklahoma state courts over the past 15 years. *See Chieftain* Fee Order (Doc. 244-31) at ¶6(t); *see also, e.g., Fitzgerald Farms, LLC v. Chesapeake Operating, LLC,* No. CJ-2010-38, 2015 WL 5794008, at *3 (Okla. Dist. Ct., Beaver County, July 2, 2015) (collecting Oklahoma cases to find in "the royalty underpayment class action context, the customary fee is a 40% contingency fee" and awarding 40% fee of $119 million common fund). Federal and state courts in Oklahoma often approve similar fee awards in similar cases. *See* Table of Cases (Doc. 244-23); *see also, Chieftain* Fee Order (Doc. 244-31) at ¶6(u). For example, this Court recently awarded a fee in *Chieftain Royalty Co. v. XTO Energy, Inc.,* No. 11-cv-29-KEW (E.D. Okla. Mar. 27, 2018) that represented 40% of the cash component of the settlement. *See Chieftain* Fee Order (Doc. 244-31). Further, the Western District of Oklahoma recently approved a 40% fee and a 39% fee in similar royalty underpayment class cases. *Chieftain v. Laredo Petro., Inc.,* 2015 WL 2254606, at *4 ("Class Counsel's request of forty percent (40%) of the $6,651,997.95 Settlement Amount is within the acceptable range of attorneys' fees approved by Oklahoma Courts as being fair and reasonable in contingent fee class action litigation . . .");

14

*Chieftain Royalty Co. v. QEP Energy Co.*, 2013 WL 12090676, at *3 (awarding a fee of $46.5 million, which represented approximately 39% of the cash portion of a $155 million settlement). Given the outstanding cash recovery plus the substantial past and future benefits obtained, the fact that the Fee Request is in line with the typical fee award granted in similar cases supports its approval. Moreover, a 40% fee is consistent with the market rate for high quality legal services in royalty underpayment class actions like this. *See Chieftain* Fee Order (Doc. 244-31) at ¶6(v); *Chieftain v. Laredo Petro., Inc.*, 2015 WL 2254606, at *4 ("The market rate for Class Counsel's legal services also informs the determination of a reasonable percentage to be awarded from the common fund as attorneys' fees."). This Court has held a contingency fee negotiated at arms' length at the outset of the litigation "reflect[s] the value the Class Representatives placed on the future success of [the] [a]ction." *Chieftain* Fee Order (Doc. 244-31) at ¶6(v) (quoting *CompSource Oklahoma*, 2012 WL 6864701, at *8; *see also Chieftain v. Laredo Petro., Inc.*, 2015 WL 2254606, at *4 ("Class Representative negotiated at arm's-length and agreed to a forty percent (40%) contingency fee at the outset of this litigation, reflecting the value Class Representative placed on the future success of this Litigation."). Here, Class Representative agreed Class Counsel would represent him on a contingency fee basis, not to exceed 40%. *See* Cecil Decl. (Doc. 244-3) at ¶7; Joint Counsel Decl. (Doc. 244-8) at ¶¶82, 84, 86-92, 98; Gensler Decl. (Doc. 244-27) at ¶¶58-61; Fitzpatrick Decl. (Doc. 244-28) at ¶16-21; Taylor Decl. (Doc. 244-29) at ¶¶12-14. And, Cecil's declaration demonstrates his continued support of the fairness and reasonableness of the Fee Request. Cecil Decl. (Doc. 244-3) at ¶¶16-18. This factor supports the Fee Request.

26.     I find the sixth *Johnson* factor—the contingent nature of the fee—also supports the Fee Request. Joint Counsel Decl. (Doc. 244-8) at ¶99; Gensler Decl. (Doc. 244-27) at ¶57-61; Fitzpatrick Decl. (Doc. 244-29) at ¶16; *see* Taylor Decl. (Doc. 244-28) at ¶13. *See*

15

*Chieftain* Fee Order (Doc. 244-31) at ¶6(w). Plaintiff's Counsel undertook this Litigation on a purely contingent fee basis (with the amount of any fee being subject to Court approval), assuming a substantial risk that the Litigation would yield no recovery and leave them uncompensated. *See* Joint Counsel Decl. (Doc. 244-8) at ¶99; *see also* Fitzpatrick Decl. (Doc. 244-29) at ¶22. Courts consistently recognize that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See Chieftain* Fee Order (Doc. 244-31) at ¶6(w). As Professor Gensler aptly notes, "Plaintiff's Counsel invested significant time and money over the years of litigation with no guarantee of reimbursement or recovery." Gensler Decl. (Doc. 244-27) at ¶63; *see also* Joint Counsel Decl. (Doc. 244-8) at ¶99. Indeed, plaintiff's counsel may expend thousands of hours litigating royalty underpayment class actions where the courts denied class certification and thus, plaintiff's counsel received no remuneration or reimbursement of expenses whatsoever despite their diligence and expertise.[2] The Court finds it would not have been economically prudent or feasible if Plaintiff's Counsel were to pursue the case under any prospect that the Court would award a fee on the basis of normal hourly rates. Joint Counsel Decl. (Doc. 244-8) at ¶84. *See Chieftain* Fee Order (Doc. 244-31) at ¶6(w). Further, Class Representative negotiated and agreed Plaintiff's Counsel would represent him on a contingency fee basis, not to exceed 40%. *See* Cecil Decl. (Doc. 244-3) at ¶7; Joint Counsel Decl. (Doc. 244-8) at ¶¶82, 84, 86-92, 98; Gensler Decl. (Doc. 244-27) at ¶¶58-61; Fitzpatrick Decl. (Doc. 244-29) at ¶16-21; Taylor Decl. (Doc. 244-28) at ¶¶12-14. This agreed-upon fee reflects the value of this Litigation as measured when the risks and uncertainties of litigation still lay ahead. *See Chieftain* Fee Order (Doc. 244-31) at ¶6(x); *CompSource*, 2012 WL 6864701, at *8; *Chieftain v. Laredo Petro., Inc.*, 2015 WL 2254606, at

---

[2] *See, e.g., Schell v. Oxy USA, Inc.,* 814 F.3d 1107, 1112 & 1125-26 (despite winning summary judgment in favor of plaintiff class after seven years of litigation, no attorney's fee was awarded). *See also,* Joint Counsel Decl. (Doc. 244-8) at ¶18, n.7 (listing the three prior putative class actions in which BP defeated certification).

*2. If Plaintiff's Counsel had not been successful, they would have received zero compensation (not to mention reimbursement for expenses). Joint Counsel Decl. (Doc. 244-8) at ¶99; *see also Chieftain* Fee Order (Doc. 244-31) at ¶6(x); *Tibbetts v. Sight 'n Sound Appliance Ctrs., Inc.*, 2003 OK 72, ¶¶11 & 15-23, 77 P.3d 1042. Prearranged fees, whether fixed or contingent, can be helpful in setting court awarded fees in class actions. Fitzpatrick Decl. (Doc. 244-29) at ¶16. Accordingly, this factor strongly supports the Fee Request.

27.     The tenth *Johnson* factor—the undesirability of the case—also supports the Fee Request. Joint Counsel Decl. (Doc. 244-8) at ¶103; Gensler Decl. (Doc. 244-27) at ¶57; Fitzpatrick Decl. (Doc. 244-29) at ¶22; *see generally,* Taylor Decl. (Doc. 244-28). *See Chieftain* Fee Order (Doc. 244-31) at ¶6(y). Compared to most civil litigation, this Litigation clearly fits the "undesirable" test given BP's history of defeating class certification. Joint Counsel Decl. (Doc. 244-8) at ¶18, n.7. Few firms or plaintiffs have successfully asserted these claims against BP; and bringing those law firms that have asserted such claims together to resolve the claims in a near global settlement of currently pending royalty underpayment class actions against a defendant is laudable. *See* Joint Counsel Decl. (Doc. 244-8) at ¶44; Taylor Decl. (Doc. 244-28) at ¶¶7-9, 14 (describing Plaintiff's Counsel's efforts as "extraordinary," deserving of pride in the legal profession, "monumental," "historic," and concluding with "historically good work."); *Chieftain* Fee Order (Doc. 244-31) at ¶6(y). Few law firms would be willing to risk investing the time, trouble, and expenses necessary to prosecute this Litigation for multiple years. *See* Joint Counsel Decl. (Doc. 244-8) at ¶87; *Chieftain* Fee Order (Doc. 244-31) at ¶6(y). Further, Defendant has proven itself to be a worthy adversary that will fight for years and years in bitter, adversarial litigation.[3] There was no doubt from the beginning that this lawsuit would be a lengthy, expensive,

---

[3] *See, e.g.,* Joint Counsel Decl. (Doc. 244-8) at ¶18, n.7 (listing the three prior putative class actions in which BP defeated certification).

time-consuming, and arduous undertaking. Indeed, in another complex royalty class action that

Mr. Sharp settled, the Oklahoma state court explained:

> Few law firms are willing to litigate cases requiring review of tens of thousands of pages of detailed contracts and accounting records, advance payment of hundreds of thousands of dollars in consultants and expert witness fees, and investment of substantial time, effort, and other expenses throughout an unknown number of years to prosecute a case with high risk, both at the trial and appellate levels.

*Fitzgerald Farms*, 2015 WL 5794008, at *8; *see also Chieftain* Fee Order (Doc. 244-31) at ¶6(y).

The same principle holds true here. This factor also supports the Fee Request.

28.    I find the eleventh *Johnson* factor—the nature and length of the professional

relationship with the client—also supports the Fee Request. *See Chieftain* Fee Order (Doc. 244-

31) at ¶6(z). Mr. Cecil is a typical royalty owner without much knowledge of oil and gas

production, marketing, and royalty payment practices. *See* Cecil Decl. (Doc. 244-3) at ¶3.

However, due to a prior attorney-client relationship with Mr. Sharp, he was willing to step up and

be a class representative in this case. Mr. Cecil was and remains very active in this litigation. *Id.*

at ¶¶5, 7-12, 14-15. He negotiated a 40% fee when he agreed to be class representative in this

litigation. And, Mr. Cecil, the named plaintiffs in the *Chockley* and *Chieftain* Cases, and absent

class members support the Fee Request. Cecil Decl. (Doc. 244-3) at ¶¶16-18; Joint Decl. of

*Chockley* Plaintiffs (Doc. 244-4) at ¶5; Chieftain Decl. (Doc. 244-5) at ¶5; Baptist Foundation

Decl. (Doc. 244-6) at ¶5; Sagacity, Inc. Decl. (Doc. 244-7) at ¶5. Accordingly, this factor supports

Class Counsel's fee request.

29.    In summary, upon consideration of the evidence, pleadings on file, arguments of

the parties, and the applicable law, I find that the *Johnson* factors under federal common law

weigh heavily in favor of the Fee Request and that the Fee Request is fair and reasonable and

should be and is hereby approved.

**D.      The Request for Reimbursement of Litigation Expenses is Reasonable Under Federal Common Law.**

30.      "As with attorney fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred...in addition to the attorney fee percentage." *Chieftain Royalty Co. v. XTO Energy Inc.*, No. 11-cv-29-KEW (E.D. Okla. Mar. 27, 2018), Order Awarding Litigation Expenses ("*Chieftain* Litigation Expenses Order") (Doc. 244-32) at 6(f) (quoting *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000)); FED. R. CIV. P. 23(h) (authorizing the Court to reimburse counsel for "non-taxable costs that are authorized by law.").

31.      Class Representative requests reimbursement of the almost $1.48 million in Litigation Expenses that Class Counsel have incurred or advanced in prosecuting and resolving this Litigation. Supp. Jt. Counsel Decl. (Doc. 253-1) at ¶5.b ($1,444,568.29 in expenses to-date). At the Final Fairness Hearing, Class Counsel reported that litigation expenses through November 16, 2018, total $1,483,739.79 and an additional $36,700 in litigation expenses are anticipated after the Hearing to prepare the Final Allocation, implement the terms of the Settlement Agreement, distribute the Net Settlement Amount to the Class Members, and respond to Class Member inquiries. Because the amount of future expenses is uncertain, Class Representative also requests reimbursement for additional Litigation Expenses that are expected to be advanced or incurred by Class Counsel after November 19, 2018, for a total award not to exceed $1.6 million—the amount set forth in the Notice of Settlement approved by this Court. Approval of $1.6 million in Litigation Expenses reimburses Class Counsel for the already incurred Litigation Expenses of $1,483,739.79 and provides future reimbursement for the anticipated future Litigation Expenses of $36,700, when incurred, and leaves a balance of $79,560.21 to provide reimbursement of future expenses to be approved by the Court upon motion.

32.     The Court finds that, as of November 19, 2018, Class Counsel has advanced or incurred $1,483,739.79 in reasonable and necessary Litigation Expenses. The costs include routine expenses related to copying, court fees, postage and shipping, phone charges, legal research, and travel and transportation, as well as expenses for experts, document production and review, and mediation, which are typical of large, complex class actions such as this. *See* Joint Decl. (Doc. 244-8) at ¶¶ 111-113; Supp. Jt. Decl. (Doc. 253-1) at ¶ 5.b. The Court finds these expenses were reasonably and necessarily incurred by Class Counsel and are directly related to their prosecution and resolution of this Litigation. *Id.* at ¶¶108-113; Supp. Jt. Decl. (Doc. 253-1) at ¶ 5.b.[4]

33.     Therefore, Class Counsel is awarded $1,483,739.39 in past expenses and may request any additional amount Class Counsel may incur after the entry of this Order, not to exceed the remainder of $1,600,000, upon 10 days' written notice to the Court. If, upon receipt of any such future request, the Court has not ruled within 10 days thereof, such request shall be deemed granted.

**E.      The Requested Case Contribution Award is Reasonable Under Federal Common Law.**

34.     Federal courts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case and the risks they take. *See Chieftain Royalty Co. v. XTO Energy Inc.,* No. 11-cv-29-KEW (E.D. Okla. Mar. 27, 2018), Order Granting Case Contribution Award ("*Chieftain* Case Contribution Award Order") (Doc. 244-33) at ¶6(f); *see also, e.g., UFCW Local 880-Retail Food v. Newmont Mining Corp.,* 352 Fed. Appx. 232 (10th Cir. 2009) ("Incentive awards [to class representatives] are justified when necessary to induce individuals to become named representatives...Moreover, a class representative may be entitled to an award for

---

[4] As further support for the Court's finding, the Court notes that several Class Members executed declarations in support of Class Counsel's Expense Request. *See* Cecil Decl. (Doc. 244-3) at ¶18, *Chockley* Plaintiffs' Decl. (Doc. 244-4) at ¶7; Chieftain Decl. (Doc. 244-5) at ¶7; Baptist Foundation Decl. (Doc. 244-6) at ¶7; Sagacity, Inc. Decl. (Doc. 244-7) at ¶7.

personal risk incurred or additional effort and expertise provided for the benefit of the class.");[5]
*Chieftain Royalty Co. v. Laredo Petroleum, Inc.*, No. 12-cv-1319-D, 2015 WL 2254606, at \*4-5 (W.D.
Okla. May 13, 2015) (awarding 1% of the settlement amount and finding, "Case contribution awards
are meant to 'compensate class representatives for their work on behalf of the class, which has
benefited from their representation.'") (*citing In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150
(S.D.N.Y. 2010)); *Fankhouser v. XTO Energy, Inc.*, No. CIV-07-798-L, 2012 WL 4867715, at \*3
(W.D. Okla. Oct. 12, 2012) (granting four plaintiffs incentive awards totaling $100,000 from $37
million fund); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006)
(1.5% of $1.06 billion fund, equaling $15,900,000 to be split among nine class representatives and
stating "[t]here is ample precedent for awarding incentive compensation to class representatives at
the conclusion of a successful class action."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205
F.R.D. 369, 400 (D.D.C. 2002) ("Incentive awards are not uncommon in class action litigation and
particularly where . . . a common fund has been created for the benefit of the entire class."); *Enter
Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) (awarding
$300,000 to class representatives, equaling .93% of current cash portions of settlement and
approximately .53% of estimated present value); *In re Dun & Bradstreet Credit Servs. Customer
Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) ($215,000 in incentive awards from $18 million
fund); *Cobell v. Salazar*, 679 F.3d 909, 922-23, (D.C. Cir. 2012) (district court did not err in finding
that lead plaintiff's "singular, selfless, and tireless investment of time, energy, and personal funds to
ensure survival of the litigation [merited] an incentive award"); *Rodriguez v. West Publ'g Corp.*, 563

---

[5] *Newmont* further held the district court did not abuse its discretion in denying an incentive award
to a *pro se* objector because: (i) his objections did not confer a benefit on the class, (ii) he did not
incur any risk, "nor could he, since his participation as an objector began after a settlement was
reached and a common fund was created" (*id.* at 236), and (iii) his objections to class counsel's
attorneys' fees were "general and lacking in meaningful analysis" (*id.* at 237).

F.3d 948, 958 (9th Cir. 2009) ("Incentive awards . . . are intended to compensate class representatives for work done on behalf of the class . . . .").

35.     The services for which incentive awards are given typically include "monitoring class counsel, being deposed by opposing counsel, keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." *Chieftain* Case Contribution Award Order (Doc. 244-33) at ¶6(g) (quoting Newberg § 17:3). The award should be proportional to the contribution of the plaintiff. *Id.* (citing *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1081 (7th Cir. 2013) (if the lead plaintiff's services are greater, her incentive award likely will be greater); *Rodriguez,* 563 F.3d at 960 (incentive award should not be "untethered to any service or value [the lead plaintiff] will provide to the class"); Newberg § 17:18).

36.     Here, Cecil seeks an award of $450,000, distributed as follows: John Cecil $350,000; Anne Chockley $25,000; Dwayne Sager $25,000; Johnita L. Foster $25,000; and Chieftain Royalty Company $25,000, based on the contribution each made to the prosecution of royalty underpayment claims against BP. Cecil is the Class Representative who pursued the class claims vigorously and whose case brought BP to the mediation table. Cecil Decl. (Doc. 244-3) at ¶¶5-15, 19-21. Cecil monitored the litigation, stayed in contact with Plaintiff's Counsel, reviewed documents as requested, traveled to and attended two mediations in January and February 2018, remained available to discuss and advise as the settlement negotiations continued into the spring of 2018, and read and signed the Settlement Agreement, including its exhibits. *Id.* His declaration provides evidence of his involvement in and contribution to this case throughout the Litigation. *Id.* The declarations of the other four named plaintiffs and absent class members support his request. *Chockley* Plaintiffs' Decl. (Doc. 244-4) at ¶6; Chieftain Decl. (Doc. 244-5) at ¶6; Baptist Foundation Decl. (Doc. 244-6) at ¶6; Sagacity, Inc. Decl. (Doc. 244-7) at ¶6. *See Chieftain* Case

22

Contribution Award Order (Doc. 244-33) at ¶6(h) (citing Newberg § 17:12). And, Cecil will continue to work on behalf of the Settlement Class in the coming weeks and months, including through administration of the Settlement. Cecil Decl. (Doc. 244-3) at ¶20. Cecil also will spend additional time in the event of an appeal, conferring with Class Counsel and reviewing additional pleadings. The Court agrees with Class Counsel that Cecil's active participation has contributed significantly to the prosecution and resolution of this case. Joint Counsel. Decl. (Doc. 244-8) at ¶117.

37.     The Court further finds that Cecil was never promised any recovery or made any guarantees prior to filing this Litigation, nor at any time during the Litigation. Cecil Decl. (Doc. 244-3) at ¶21. In fact, if the Court determines that no award is appropriate, Cecil understands and agrees that such an award, or rejection thereof, has no bearing on the fairness of the Settlement and that it will be approved and go forward no matter how the Court rules on its request. *Id.* In other words, Cecil fully supports the Settlement as fair, reasonable and adequate, even if he is awarded no case contribution award at all. *Id.* Cecil has no conflicts of interest with Class Counsel or any absent class member. *Id.*

38.     Because Cecil, Chockley, Sager, Foster, and Chieftain Royalty Company have dedicated their time, attention, and resources to this Litigation and to the recovery of underpaid royalty from BP on behalf of the Settlement Class, I find they are entitled to a Case Contribution Award to be shared among them. To reflect the important role that each played in representing the interests of the Settlement Class and in achieving the substantial result reflected in the Settlement, the Court awards a Case Contribution Award of $450,000 to be distributed among Cecil and the plaintiffs in *Chockley v. BP* and *Chieftain v. BP* as follows: John Cecil $350,000; Anne Chockley $25,000; Dwayne Sager $25,000; Johnita L. Foster $25,000; and Chieftain Royalty Company

$25,000.

### F.    Finality of Order

39.    Any appeal or any challenge affecting this Order Awarding Attorneys' Fees, Reimbursement of Litigation Expenses, and Case Contribution Award shall not disturb or affect the finality of the Order and Judgment Granting Final Approval of Class Action Settlement, the Settlement Agreement, or the Settlement contained therein.

40.    Exclusive jurisdiction is hereby retained over the parties and the Class Members for all matters relating to this Litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this Order.

41.    There is no reason for delay in the entry of this Order and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

42.    All objections to the Fees Request, Litigation Expenses, and Case Contribution Award are hereby overruled in their entirety. Four objections were filed with the Court by purported Class Members. (*See* Docs. 246, 247, 248, 249).[6] Taking them in reverse order:

   a.    The Court finds that Mr. Denton is not a member of the Settlement Class. He makes no objection to the Settlement or the requests for Fees, Litigation Expenses or Case Contribution Award. If he was a member of the Settlement Class, and if his "Request

---

[6]    On November 13, 2018, just days before the Final Fairness Hearing, Mr. Denton filed two additional documents: (1) "Motion For A More Definite Statement" (Doc. 256), in which he asks the Court to order BP to confirm he is not a royalty owner; and (2) "Objections Relating to Petitioners Request For Declaratory Judgment and Request for Ruling" (Doc. 257), in which he asks the Court to rule on his Request for Declaratory Judgment (Doc. 249), which seeks "Declaratory Judgment AS to Whether He Is A Member of the Class." (Doc. 249 at ¶17 (Capitalization per original)). The finding in subparagraph (a) that Mr. Denton is not a member of the Settlement Class provides the declaration Mr. Denton seeks in his Request for Declaratory Judgment; thereby, finally resolving Docs. 249, 256 and 257.

for Declaratory Judgment" was considered to be an objection to the Settlement, or any part of it, the objection was untimely, having been filed on October 30, 2018, four-days after the October 26th deadline, and non-compliant with the requirements for an objection set forth in the Settlement Agreement, Preliminary Approval Order, and Notice of Settlement.

b.      The Court finds the objection of Ms. Campbell, while untimely filed on October 29, 2018, and non-compliant with the requirements for an objection set forth in the Settlement Agreement, Preliminary Approval Order, and Notice of Settlement, does not go to the Fee Request, Litigation Expenses, or Case Contribution Award. Instead it objects to the Allocation Methodology but it provides no factual basis and presents no evidence to support it. The objection is also indecipherable. Consequently, were the Court to overlook the untimeliness and non-compliance stated above, the Campbell Objection is overruled on the merits.

c.      The objections of Robert T. Moffett and John E. Brewster, Jr. do object to the Fees Request, Expenses Request and Case Contribution Award. (Docs. 246, 247). The Court overrules their objections on the Fees Request because: (1) The Tenth Circuit has expressed a preference for the Percentage of the Fund method for awarding attorneys' fees in class actions like this one. *Gottlieb v. Barry,* 43 F.3d 474, 483 (10th Cir. 2004); (2) this case is based on federal question jurisdiction, not diversity jurisdiction, so federal common law governs the requests; (3) the Settlement Agreement provides for the application of federal common law to the Fee Request; (4) the above analysis of the *Johnson* factors abundantly supports the Fees Request; (5) this Court has previously applied the Percentage approach to the Gross Settlement Value, including the value of past and future benefits;

and, (6) the lodestar/multiplier method would easily satisfy the Fee Request.[7]

d.       The Court overrules the objections to the Expenses Request because, again, the Brewster Objection offers no evidence to support its charge that the Litigation Expenses are unreasonable given the scope of activity and expenses incurred as attested to in the declarations of Counsel.

e.       The Court overrules the objections to the Case Contribution Award because the Request comports with prior awards in similar cases. Table of Awards (Doc. 244-23); *Chieftain* Case Contribution Award (Doc. 244-33). Again, the Moffett objection offers no evidence or legal authority to support it. And, Class Representative and Class Counsel have offered significant evidence of support for the award. *See* Cecil Decl. [Doc. 244-3]; Joint Decl. of Chockley Plaintiffs [Doc. 244-4]; Chieftain Decl. [Doc. 244-5]; Baptist Foundation Decl. [Doc. 244-6]; Sagacity Decl. [Doc. 244-7]; Joint Counsel Decl. [Doc. 244-8], all of which support the case contribution award to Mr. Cecil.

43.     The Court finds that, to the extent any objections remain, all objections are overruled. If any objector appeals this Order Awarding Attorneys' Fees, Reimbursement of Litigation Expenses, and Case Contribution Award, or the Final Approval Order, or any other rulings of this Court, such objector is hereby ordered, pursuant to the Settlement Agreement (Doc. 171-1) at ¶10.3, to which no objection was made, to post a cash bond in an amount to be set by the Court sufficient to reimburse Class Counsel's appellate fees, Class Counsel's expenses, and the lost interest to the Class caused by the delay, at a rate not less than two percent (2%) per annum.[8]

---

[7]      The total hours (over 21,000) times the hourly rates ($850-900) times a reasonable multiplier (less than 3.3) exceeds the Fee Request. Suppl. Jt. Decl. (Doc. 253-1) at ¶ 5. The Court finds that lodestar and multipliers reasonable in this case.

[8]      This appeal bond order is consistent with the Order Awarding Attorneys' Fees that I entered in *Reirdon v. XTO Energy, Inc.,* No. 16-cv-87-KEW, at ¶11 (E.D. Okla. Jan. 29, 2018) (Doc. 124).

IT IS SO ORDERED this _19th_ day of November____, 2018.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE