# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN CECIL, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Civil Action No. 16-CV-00410-KEW |
| vs. | |
| BP AMERICA PRODUCTION COMPANY (f/k/a Amoco Production Company) (including BP Amoco Corporation, ARCO, BP Exploration, Inc., BP Corporation North America, Inc., and BP Energy Company), | |
| Defendant. | |

**DEFENDANT'S MOTION TO ENFORCE
SETTLEMENT AGREEMENT AND JUDGMENT
AND BRIEF IN SUPPORT**

Pursuant to this Court's retained jurisdiction to enforce its November 19, 2018 Judgment (Doc. 259, "Judgment") approving the class action Settlement Agreement (Doc. 171-1, "Settlement Agreement"),[1] Defendant BP America Production Company ("BP America") seeks enforcement of such Judgment and its permanent injunction against certain Class Counsel who are violating the terms thereof.  Concisely stated:

(1) All of the Released Claims for any relief relating to underpaid or unpaid royalties from BP America's wells statewide have been definitively settled, dismissed with prejudice, and released (Judgment, ¶11).

(2) The Judgment defines the attorneys of the firm Barker, Woltz & Lawrence ("Barker Firm") as "Class Counsel" (Judgment, ¶4) and defines Class Counsel as "Releasing Parties" (*id.,* ¶5) who are required to comply with the obligations imposed by the Judgment, permanent injunction, and Settlement Agreement (*id.*, ¶11).

(3) The Barker Firm attorneys ("Releasing Parties") – who before entry of Judgment threatened to pursue a competing claim in the *Watts* case[2] for punitive damages quantified by reference to alleged harm to *Cecil* class members, have *persisted* in prosecuting that claim *after* this Court entered its Judgment releasing and enjoining any such claim – thus violating the Settlement Agreement, the Judgment, and the permanent injunction.

---

[1] Since the Judgment (Doc. 259) and Settlement Agreement (Doc. 171-1) are electronic filings herein, BP America does not separately attach them as exhibits.

[2] *Watts Ranch, LLC v. Amoco Production Co.*, Case No. C-2001-73 (D. Ct. Pittsburg Co., Okla.) ("*Watts*").  The *Watts* case involves six individual claims on a single gas gathering system in two Oklahoma counties, excluded from the *Cecil* settlement class, whereas the instant case settled claims for royalty owners in BP America's wells statewide.

1

## BACKGROUND

The parties have previously briefed the background of the *Watts* competing punitive damages claims. BP America sought to enjoin the Barker Firm's prosecution of those claims *before* this Court's September 5, 2018 preliminary settlement-approval hearing to prevent interference with finalization of the settlement. Doc. 205 (BP America's supplemental motion), Doc. 216 (Barker Firm's response for *Watts* plaintiffs), Doc. 217 (Plaintiffs' response), Doc.219 (BP America's reply to both responses). At the September 5, 2018 hearing, this Court heard argument explaining that the *Watts* plaintiffs were in a "race to judgment" with the *Cecil* plaintiffs herein, since Oklahoma law did not permit both sets of plaintiffs to recover punitive damages based on the same alleged harm to the *Cecil* class members. 23 O.S. §9.1(C)(2)(c).[3] *See* Ex. 1, excerpts from 9/5/18 Hearing Tr. at 15-17 (discussing the race to judgment), *id.,* Tr. 34-35 (the Court's expression of hope for the *Watts* court continuing its trial setting past the *Cecil* final fairness hearing). BP America's counsel also urged that in the event this Court *did* win the race by entering judgment on the settlement before the *Watts* plaintiffs prosecuted their punitive damages claim, this Court would have an additional ground to bar the competing claim, since it would encroach on the Court's Judgment. Ex. 1, excerpts from 9/5/18 Hearing Tr. at 19-20.

---

[3] "The trial court shall reduce any award for punitive damages awarded pursuant to the provisions of subparagraph c of this paragraph by the amount it finds the defendant or insurer has previously paid as a result of all punitive damage verdicts entered in any court of this state for the same conduct by the defendant or insurer."

That is the current situation. The *Cecil* Plaintiffs won the race to Judgment (that the Barker Firm improperly waged to begin with). On 11/19/18, this Court conducted the final fairness hearing and entered Judgment on the Settlement Agreement, including the parties' agreed permanent injunction against claims for any harm to the *Cecil* class members embraced within the broad definition of "Released Claims." Settlement Agreement, ¶1.35. Nevertheless, the Barker Firm attorneys – who are defined as "Releasing Parties" because they are Class Counsel (*id.,* ¶1.37) – persist in pressing the same punitive damages claims.

BP America at this stage only seeks this Court's Order explicitly <u>*directing*</u> Barker Firm's attorneys to comply with the obligations this Court has <u>*already*</u> imposed on them as Class Counsel. BP America does not at this time seek a contempt order.

## ARGUMENT AND AUTHORITIES

**I. THIS COURT POSSESSES RETAINED JURISDICTION TO ENFORCE THE JUDGMENT AND SETTLEMENT AGREEMENT – AND FEDERAL PUBLIC POLICY STRONGLY SUPPORTS SUCH ENFORCEMENT**

As the parties agreed, in the Judgment this Court retained jurisdiction as to:

> (v) all matters concerning the administration and enforcement of the Settlement, including the entry of injunctive or other relief to enforce, implement, administer, construe and/or interpret the Settlement Agreement.

Judgment, ¶23. *E.g., Flying J Inc. v. Comdata Network, Inc.,* 405 F.3d 821, 827 (10th Cir. 2005) ("In accordance with the parties' request, the district court reserved jurisdiction to enforce the terms of the settlement agreement.").

This Court's jurisdiction to enforce the Settlement Agreement, either by additional directive or by contempt (which BP America has not yet sought), would be unquestionable even absent its express retention of jurisdiction. *E.g., Farmer v. Banco Popular of N. Am.,*

3

557 F. App'x 762, 769 (10th Cir. 2014) (citing, *inter alia*, *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004)); *Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 570 (10th Cir. 2013) (class action royalty underpayment settlement: "In any event, the court's authority to enforce the terms of a settlement agreement would seem so obvious as to be beyond challenge.")[4]

The Tenth Circuit also recognizes that enforcement of a settlement promotes a "'public policy favoring settlement and avoidance of litigation ….'" *Hershey,* 550 F. App'x at 570 (class action royalty underpayment settlement); *Desktop Direct, Inc. v. Digital Equip. Corp.,* 993 F.2d 755, 758 (10th Cir. 1993), *aff'd,* 511 U.S. 863 (1994) (a district court's enforcement of a settlement "implicates our nation's strong judicial and public policies favoring out-of-court settlement" since: "Litigants, courts, and Congress view settlement as a positive force, indispensable to judicial administration." [Internal cites and quote omitted.]).

## II. THE BARKER FIRM ATTORNEYS ARE "RELEASING PARTIES" UNDER THE COURT'S JUDGMENT, INJUNCTION, AND INCORPORATED SETTLEMENT AGREEMENT

The Judgment defines "Releasing Parties" and "Released Claims" using the definitions set forth in the Settlement Agreement.  Judgment, ¶¶1 and 5.

---

[4] *See also Lorillard Tobacco Co. v. Chester, Wilcox & Saxbe*, 589 F.3d 835, 847 (6th Cir. 2009) (class action injunction – stating that when a district court enters an injunction it "automatically retains jurisdiction to enforce it," and holding that "enjoining of the state-court litigation" was "a proper means of enforcing its previously entered permanent injunction." [Internal quotations omitted.]); *In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 298 (3d Cir. 2004) (class action settlement:  "Emphatically, the District Court is empowered to protect its jurisdiction and effectuate the settlement agreement.").

The Settlement Agreement defines "Releasing Parties" to include Class Members and, among others, their "attorneys". Settlement Agreement, ¶1.37.

On June 12, 2018, Terry Barker and Joseph Woltz of the Barker Firm entered their appearances on behalf of the Plaintiff herein. The Court's Judgment expressly defines Class Counsel to include the attorneys of the Barker Firm: "Settlement Class Counsel are [among others] Barker, Woltz & Lawrence, APPC; …." Judgment, ¶4.

Accordingly, the Barker Firm attorneys are "Releasing Parties" herein, and are obliged to comply with the duties imposed upon them as such by the Settlement Agreement, this Court's Judgment, and the permanent injunction contained in the Judgment.

### III. THE JUDGMENT AND SETTLEMENT AGREEMENT PROVIDE THAT "RELEASING PARTIES" ARE BARRED FROM PURSUING ANY CLAIM FOR HARM TO THE *CECIL* CLASS MEMBERS RELATING TO ALLEGED UNDERPAID ROYALTIES IN BP AMERICA'S WELLS STATEWIDE

This Court's Judgment dismisses "with prejudice" the *Cecil* class members' claims (¶11 and ¶25) and explicitly provides (¶11) that:

> The Releasing Parties are hereby deemed to have finally, fully, and forever conclusively released, relinquished, and discharged all of the Released Claims against the Released Parties to the fullest extent permitted by law.

The Judgment adopts all defined terms in the Settlement Agreement, which it incorporates by reference. *Id.*, ¶1 and ¶5. "Released Claims" is defined by the Settlement Agreement to include, among other things, "all claims, actions [and] demands, … theories of liability and recovery of whatsoever kind and nature, … asserted or that could have been asserted in the Litigation … related to or arising from the underpayment or non-payment by the

5

Released Parties … of royalties on gas and gas constituents" from BP America's wells throughout Oklahoma. The definition specifically includes, "without limitation, claims based in whole or in part on allegations" that the Released Parties committed any of a long series of described acts – including underpaying royalties, failing to disclose any such underpayment, or committing any tort relating to any such underpayment; and includes any claim for, among other things, "punitive damages" relating to any such underpayment. Settlement Agreement, ¶1.35.

The Judgment *itself* further expressly provides that the Settlement Agreement "shall be the exclusive remedy for any and all Released Claims of Class Members" and that the "Releasing Parties" have "finally, fully, and forever conclusively released, relinquished, and discharged all of the Released Claims … to the fullest extent permitted by law." Judgment, ¶11. The Judgment then enters the following permanent injunction:

> The Court hereby permanently bars and enjoins the *Releasing Parties*, … and all persons acting on behalf of, or in concert or participation with such *Releasing Parties*, from: filing, commencing, asserting, prosecuting, maintaining, pursuing, continuing, intervening in, or participating in, or receiving any benefits from, any lawsuit (including without limitation a putative class action), … in any jurisdiction based upon or asserting any of the Released Claims.

Judgment, ¶11 (emphasis added).[5]

---

[5] *See also* Settlement Agreement, ¶2.1 ($147 million consideration is being paid "to buy peace from litigation concerning the Released Claims and finality of resolution concerning said claims is material to [BP America's] willingness to enter into this Settlement Agreement …."); ¶2.5 (class members' receipt of $147 million is in exchange for their releases, dismissals, and covenants under the Settlement Agreement); ¶4.1 ("Releasing Parties," which includes the Barker Firm attorneys, "shall be enjoined from asserting or prosecuting any Released Claims against any Released Parties."); ¶4.3 ("Releasing

6

### IV. THE BARKER FIRM IS PERSISTING, IN VIOLATION OF THE SETTLEMENT AGREEMENT, JUDGMENT, AND INJUNCTION, TO PRESS CLAIMS FOR DAMAGES BASED ON HARM TO THE *CECIL* CLASS MEMBERS RELEASED HEREIN

Before the Court entered Judgment, BP America sought to enjoin the Barker Firm from interfering with the *prospective* settlement, and documented that firm's efforts for the *Watts* plaintiffs to claim punitive damages quantified by reference to harm to *Cecil* class members under 23 O.S. §9.1(C)(2)(c).[6]  Doc. 205, BP America's 8/16/18 supplemental motion for injunctive relief, and Doc. 219, BP America's reply supporting that supplemental motion.[7]

After the September 5, 2018 hearing and the Court's preliminary approval of the Settlement Agreement, the Barker Firm persisted in the same contentions in the *Watts* case,

---

Parties," which includes the Barker Firm attorneys, shall not "directly or indirectly" assert "any claims or actions … based in whole or in part on any facts existing during the Claim Period").

[6] The statute references one category of punitive damages measured by "the increased financial benefit derived by the defendant … as a direct result of the conduct causing the injury to the plaintiff *and other persons or entities*." (Emphasis added.)  As BP America showed (Doc. 219 at pp.4-5 and n.3), the Oklahoma Supreme Court excised the emphasized language from the uniform jury instruction for punitive damages (OUJI 5.9) based on constitutional prohibitions of *Philip Morris v. Williams*, 549 U.S. 346, 353-57 (2007), but the trial court overruled BP America's objections on those grounds.

[7] The *Watts* plaintiffs are seeking at least $480 million in punitive damages under 23 O.S. §9.1(C)(2)(c) based on alleged financial benefit to BP America derived from harm to third parties, *i.e.,* the *Cecil* class members with interests in BP America's wells statewide.  See Ex. 2, excerpt from *Watts* 7/25/18 Pretrial Conference Order (also Handout No. 7 in BP America's Index of Handouts for 9/5/18 Hearing); *see also* Ex. 3, excerpt from *Watts'* plaintiffs' Trial Ex. 2, seeking punitive damages exceeding $396 million on the same basis (also Handout No. 5 in BP America's Index of Handouts for 9/5/18 Hearing).

and has made clear its continued intent to press those same claims. Amoco (predecessor to Released Party here) sought to disqualify the Barker Firm for its conflict of interest based on the conflicting duties imposed upon that firm to the *Watts* plaintiffs and the settlement class in this case. Mr. Terry Barker of the Barker Firm − who argued to this Court at the 9/5/18 hearing (appearing for *both* the *Watts* plaintiffs *and* the *Cecil* plaintiffs)[8] − was a witness for the *Watts* plaintiffs at the *Watts* 10/31/18 state court hearing on Amoco's motion to disqualify. Mr. Barker testified therein that in *this* Court's 9/5/18 hearing, *this* Court was satisfied with his answers when questioning him about the same conflict of interest.[9] The *Watts* court denied Amoco's motion *and imposed sanctions* on Amoco for raising the conflict of interest to begin with – signing a journal entry submitted by the Barker Firm. Amoco has appealed (only the denial of disqualification, since the sanctions order is not final). More important here, however, is Mr. Barker's testimony as to the Barker Firm's intent to *continue* pressing the punitive damages claim for harm to the *Cecil* class members in reliance on 23 O.S. §9.1(C)(2)(c), *regardless* of the *Cecil* proceedings herein:

> With regard to Watts, the dicta [sic] of [23 O.S. §9.1] (C)(2)(c) that the cap on punitive damages, the amount that the jury could award to the Watts plaintiffs, there has been no settlement. There has been nothing that has diminished that in any way at all. The punitive damages that

---

[8] Mr. Barker acknowledged this when testifying before the state court at the 10/31/18 Hearing. Ex. 4, excerpt from *Watts* 10/31/18 Hearing Tr. 9 and 12.

[9] *See* Ex. 4, excerpt from *Watts* 10/31/18 Hearing Tr. 23 ("I gave her the same explanation that I just have described to you twice now. And I believe a full, fair reading of the transcript, and based upon what she's done to date, she was satisfied with the explanation.").

8

> they [the Watts plaintiffs] would be awarded are punitive damages peculiar to them in this case. The methodology that our legislature in Oklahoma has prescribed to determine what that cap is is set forth in (C)(2)(c).

Ex. 4, excerpts from *Watts* 10/31/18 Hearing Tr. 28-29. Mr. Barker's partner from the Barker Firm, Robert Lawrence, elaborated further in argument on the Barker Firm's position – urging that BP America was *foreclosed by the agreed Judgment* from seeking to enforce its provisions. Ex. 4, excerpts from *Watts* 10/31/18 Hearing Tr. 46-48. Mr. Lawrence cited agreed provisions that the Settlement Agreement could not be used against BP America to establish its liability. *Id.* Mr. Lawrence omitted the dispositive provision of the Judgment, which states: "Nothing in this Judgment shall bar any action or claim by Class Representative or Defendant to enforce or effectuate the terms of the Settlement Agreement or Judgment." Judgment, ¶14 (or ¶13 of the version attached to the Settlement Agreement from which Mr. Lawrence read).

More important, however, are the plain expressions of intent by the Barker Firm's attorneys to continue pressing the *Watts* plaintiffs' claims for punitive damages measured by financial benefit to BP America derived from alleged harm to *Cecil* class members that has been released herein and dismissed with prejudice. *Before* this Court entered Judgment the Barker Firm justified this position to the *Watts* court by arguing that the settlement did not include punitive damages and was not yet final:

> So there is no allocation of any money in the Cecil settlement to actual punitive damages. And regardless, there hadn't been a penny paid yet. So Cecil is completely irrelevant at this point, other than the fact that, you know, 147 million, that's what they're paying to get out of it, so isn't it reasonable to say that's what the financial benefit to BP was? We

9

>think it was actually even more, but that's an evidentiary issue for the
>jury.

Ex. 6, excerpt from *Watts* 8/1/18 hearing Tr. at 48.  That argument was invalid when made, but is now based on a defunct premise.  This Court has entered Judgment and enjoined the "Releasing Parties" -- including the Barker Firm as Class Counsel -- from pursuing against BP America any of the "Released Claims," including the released punitive damages claims. The Barker Firm is obliged to comply.

## V.   THIS COURT SHOULD DIRECT THE BARKER FIRM TO CEASE VIOLATING THE COURT'S JUDGMENT AND INJUNCTION

There are numerous grounds for directing the Barker Firm to desist from seeking damages for harm that is part of the "Released Claims," now dismissed with prejudice.

First, the Barker Firm attorneys voluntarily chose to become Class Counsel in this case.  Of course, the Barker Firm benefited itself by choosing to join the *Cecil* counsel group (indeed, it was not counsel for *Cecil* before the settlement) and share in the recovery by receiving substantial attorney fees based on the alleged damages of the *Cecil* plaintiffs. By signing up as Class Counsel, the Barker Firm attorneys knew – or were deemed to know – that they were undertaking the obligations imposed on Class Counsel by the Settlement Agreement.  As Terry Barker acknowledged during the *Watts* disqualification hearing, the Barker Firm is obligated by the Settlement Agreement and the agreed Judgment to "fully support the settlement" (Ex. 4, excerpts from *Watts* 10/31/18 Hearing Tr. 11), to take no "action that would be contrary to that settlement" (*id*., Tr. 11-12), to "make sure that the

settlement and its terms are properly effectuated" (*id.*, Tr. 25), and "to support the settlement in every way [they] can" (*id.*, Tr. 26).

Even if the Barker Firm attorneys did *not* read the Settlement Agreement (Mr. Barker testified he only "glanced at" it, *id.* at 31), they were deemed to know its contents and the attached Judgment into which their names are now inserted (Judgment, ¶4) – which defines them as "Class Counsel" who are explicitly denominated as "Releasing Parties" (Judgment, ¶¶1 and 5, and Settlement Agreement, ¶1.37).  The Settlement Agreement, Judgment, and permanent injunction directly apply to the Barker Firm's attorneys, and this Court may enforce those obligations under the authorities discussed in Proposition I.

Additionally, since this Court has issued a permanent injunction against the Releasing Parties, including the Barker Firm's attorneys, they are bound to comply with that injunction − and indeed would be bound even if they were *not* defined as Releasing Parties directly enjoined − since Fed.R.Civ.P. 65(d)(2)(B) binds the enjoined party's "attorneys," among others, and Rule 65(d)(2)(C) binds anyone acting in "concert or participation with" the enjoined party or that party's attorneys, among others.  *E.g., Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 573 (10th Cir. 2013) ("[T]he district court unquestionably had the power to enjoin not only parties to the litigation before it but also those acting in concert with such parties.").  Under Rule 65(d)(2)(B), once an attorney enters an appearance in a case and has the opportunity to be heard on the propriety of an injunction, that attorney is "bound  to comply with the court order in his professional capacity."  *T-NETIX v. Value-Added Communications*, No. 3:05-CV-0654-D, 2014 WL 1327617, at *2 (N.D. Tex. April 3, 2014).

11

Finally, the Court continues to possess the authority to direct *any* party – and certainly Class Counsel herein – to forbear from violating the terms of this Court's Judgment, in aid of the Court's jurisdiction under the All Writs Act, 28 U.S.C. §1651.[10] This was the main thrust of BP America's motion for *preliminary* injunctive relief against the Barker Firm before the final fairness hearing, to prevent interference with the *prospective* finalization of the settlement. *See* Doc. 219, BP America's reply brief discussing, for example, *In re Vioxx Prod. Liab. Litig.*, 869 F. Supp. 2d 719 (E.D. La. 2012) ("*Vioxx*") and *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985) – both granting injunctions against nonparties after entering *judgments* on class action settlements.

*Vioxx* in particular illustrates similar state-court encroachments on a federal court judgment approving a class action settlement. In *Vioxx,* the claimant tried to do exactly what the Barker Firm is attempting to do here − have its expert calculate the individual state-court damages by referencing harm that was part of the released statewide claims. 869 F. Supp. 2d at 728-30.[11] *Compare* Ex. 5, excerpts from the deposition of *Watts*

---

[10] The All Writs Act, via the second exception to the Anti-Injunction Act, 28 U.S.C. §2283, "is applicable to a district court's continuing authority to enforce a settlement agreement where the agreement is either incorporated into the court's final judgment or the court expressly retains jurisdiction over the agreement in such judgment." *Lorillard Tobacco Co.*, 589 F.3d at 844.

[11] "Plaintiffs' expert calculates the recoverable value attributable to Vioxx and utilizes this value in determining the Plaintiffs' measure of damages by reference to the number of prescriptions issued in Missouri. … But a subset of Missouri Vioxx prescriptions were issued to individuals who participated in the MI settlement and released all further claims against Merck, or were paid for by participants in the TPP settlement on behalf of Missouri consumers." *Id*. at 729.

plaintiffs' expert Randy Kaplin.  The court in *Vioxx* barred claims relying on such evidence, since the "evidence could potentially (if accepted by a jury) result in a judgment against [the defendant] that includes damages attributable to claims that [the defendant] has already settled and paid …." *Id*. at 729.

The warrant for relief here is even stronger than in *Vioxx*, because here the Barker Firm attorneys – who intend to press the *Watts* plaintiffs' claims quantifying damages by reference to harm to *Cecil* class members – is *Class Counsel* for those class members, and therefore have personally assumed, as "Releasing Parties," the duty to abide by the Settlement Agreement and this Court's Judgment and permanent injunction.

## **CONCLUSION**

BP America asks the Court to direct the Barker Firm attorneys – who are Class Counsel and "Releasing Parties" – to comply with this Court's Judgment and permanent injunction enjoining them from, among other things, "continuing, . . . prosecuting, [or] supporting . . . any other action or proceeding in any jurisdiction against [BP America] that is based on, relating to, or arising out of the claims and causes of action, or the facts and circumstances at issue in this Litigation and/or the Released Claims."  Judgment, ¶11.  The Barker Firm's pursuit in the *Watts* case of punitive damages measured by alleged benefit to Amoco derived from purported harm to *Cecil* class members violates the Judgment and its injunction, and the Settlement Agreement releases.  The Barker Firm should be so instructed.

DATED AND FILED: December 31, 2018

13

Respectfully submitted,


*Charles D. Neal, Jr.*
Charles D. Neal, Jr., OBA #6591
Steidley & Neal, PLLC
CityPlex Towers
2448 E. 81st Street, 53rd Floor
Tulsa, OK 74137
(918) 664-4612
(918) 664-4133 (Facsimile)
cdn@steidleyneal.com

Daniel T. Donovan
Robert L. Littlehale
Alexandra I. Russell
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Harvey D. Ellis, OBA #2694
Crowe & Dunlevy
A Professional Corporation
Braniff Building
324 N. Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
harvey.ellis@crowedunlevy.com

D. Patrick Long, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
2000 McKinney Ave., Suite 1700
Dallas, Texas 75201
Telephone: 214-758-1500
Patrick.long@squirepb.com

Greg R. Wehrer, *pro hac vice*
Amanda D. Price, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
6200 Chase Tower, 600 Travis St.
Houston, Texas 77002
Telephone: 713-546-5850

14

**ATTORNEYS FOR DEFENDANT
BP AMERICA PRODUCTION
COMPANY**

**CERTIFICATE OF SERVICE**

  I hereby certify that on December 31, 2018, I electronically transmitted the foregoing to the Clerk of Court using the ECF System for filing which will transmit a Notice of Electronic Filing to all counsel of record**.**

           *Charles D. Neal, Jr.*
           Charles D. Neal, Jr.